[Crim. No. 24540. July 9, 1987.]

THE PEOPLE, Plaintiff and Respondent, v.
ROBERT TERRY BRAVO, Defendant and Appellant.

**COUNSEL**

Garey & Bonner and Michael Ian Garey for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Jay M. Bloom, Michael D. Wellington and Lilia E. Garcia, Deputy Attorneys General, for Plaintiff and Respondent.

Cecil Hicks, District Attorney (Orange), Michael R. Capizzi, Assistant District Attorney, William W. Bedsworth and Michael Khouri, Deputy District Attorneys, as Amici Curiae on behalf of Plaintiff and Respondent.

**OPINION**

PANELLI, J.—In this proceeding we review a decision of the Court of Appeal reversing a judgment of conviction in a criminal case. (Cal. Rules of Court, rule 28(a)(2).) The Court of Appeal held that a condition of probation that expressly authorizes only a warrantless search cannot properly be construed as permitting a search without reasonable cause. We disagree and reverse the judgment of the Court of Appeal.

I

On January 20, 1981, appellant was convicted of possessing concentrated cannabis (Health & Saf. Code, § 11357, subd. (a)). He was granted probation and, as a condition of that probation, agreed to "submit his person and property to search or seizure at any time of the day or night by any law enforcement officer with or without a warrant."[1] Appellant was still on

---

[1] The minute order form dated January 20, 1981, which reflects the grant of probation, bore entries imposing the following terms and conditions relevant to petitioner's probation: 1. "Proceedings suspended." 2. "Probation granted for a period of two years. (See Conditions listed below.)" 3. "Not use or possess any narcotics, dangerous or restricted drugs or associated paraphernalia, except with valid prescription, and stay away from places where users congregate." 4. "Not associate with persons known by you to be narcotic or drug users or sellers." 5. "Submit to periodic anti-narcotic tests as directed by the probation officer." 6. "Seek and maintain training, schooling or employment as approved by probation officer."

probation and subject to the search condition in February 1982 when an anonymous informant, who stated that he was a neighbor, telephoned the Anaheim Police Department and reported that the volume of traffic in automobiles and people in and around appellant's home suggested to the caller that appellant was involved in the sale of narcotics.[2]

Police officers conducted surveillance of appellant's home, but observed nothing to substantiate the caller's suspicions other than one occasion when numerous persons who might have been engaged in construction in the rear yard came and went. After ascertaining appellant's name, however, the officers learned that he was on probation and subject to search without a warrant. They confirmed this by obtaining a copy of the probation conditions. ▮ ▮▮▮ On March 19, 1982, the officers conducted a search of appellant's home in his presence, pursuant to the apparent waiver of Fourth Amendment rights reflected in the probation order.[3] The trial court found, and appellant does not challenge the finding, that the officers conducted the search for a proper law enforcement purpose, not for harassment.

The search of the appellant's home led to discovery and seizure of cocaine, firearms, and a large amount of cash. He was charged with possession of cocaine (Health & Saf. Code, § 11350), possession of cocaine for sale (Health & Saf. Code, § 11351), and possession by a convicted felon of a concealable firearm (Pen. Code, § 12021). After his motions to set aside the information (Pen. Code, § 995) and to suppress the evidence seized in his home (Pen. Code, § 1538.5) were denied by the trial court, appellant pleaded guilty to the charges of possessing cocaine for sale and possession of a concealable firearm. He appealed from the ensuing judgment pursuant to Penal Code section 1538.5, subdivision (m).

Appellant claimed in his appeal that the search of his residence was unlawful because the Anaheim police officers who conducted the search lacked reasonable cause to do so. He acknowledged that he was subject to

---

7. "Maintain residence as approved by probation officer." 8. *"Submit his person and property to search or seizure at any time of the day or night by any law enforcement officer with or without a warrant."* (Italics added.) 9. "Obey all laws, orders, rules and regulations of the probation department and of the court."

[2] The police report regarding the telephone call indicated that an anonymous neighbor had reported that defendant had "just moved into the neighborhood. Has girlfriend—doesn't live there. Constant foot/vehicle traffic. Does not work." The "nature of the complaint" entry stated "Sales/Narcotics."

[3] Because this matter arose before the adoption of article I, section 28, subdivision (d) of the California Constitution, the admissibility of the evidence seized in this warrantless search must be tested under article I, section 13 of the California Constitution as well as the Fourth Amendment. In this case, however, the analysis and resolution are the same under both provisions.

search as a condition of probation, and he made no claim that the waiver effected by the acceptance of that condition was not voluntary or that the search condition was unreasonable. (See *People* v. *Lent* (1975) 15 Cal.3d 481, 486 [124 Cal.Rptr. 905, 541 P.2d 545]; *People* v. *Mason* (1971) 5 Cal.3d 759, 764-765 [97 Cal.Rptr. 302, 488 P.2d 630], cert. den. (1972) 405 U.S. 1016 [31 L.Ed.2d 478, 92 S.Ct. 1289], disapproved on other grounds in *People* v. *Lent, supra,* at fn. 1.) He argued, however, that notwithstanding the search condition of his probation, a "rule of reasonableness" applied, permitting a search only if there were reasonable cause to believe he was currently involved in criminal activity.

The Court of Appeal did not reach the questions of whether search conditions in general are subject to such a rule or, if not, whether a search condition which dispenses with any cause is valid. Instead, it held that the specific probation condition accepted by this appellant did not waive all protection from "unreasonable searches." The Court of Appeal reasoned that because a search condition is a waiver of a fundamental constitutional right, it should be interpreted narrowly as with other advance waivers of constitutional rights. The proper narrow construction, the court concluded, was that the condition waived the right to be free from warrantless searches, but not the right to be free from "unreasonable" searches, as that term may be defined in the context of a probation search.[4] The court held that the search of appellant's apartment, based only on uncorroborated information—which subsequent investigation did not confirm—provided by an anonymous, untested informant, was unreasonable by any standard.

■ The People, seeking review of this decision, argue that an express waiver of both the warrant requirement and reasonable cause is not necessary when a defendant agrees as a condition of probation to submit to search "at any time with or without a warrant." Relying on our statement in *People* v. *Mason, supra,* 5 Cal.3d at page 765, that a probationer who has agreed to submit at any time to a warrantless search "may have no expectation of traditional Fourth Amendment protection," the People argue that this agreement alone waives all protection under the Fourth Amendment. If the waiver is not interpreted this broadly, the People suggest, the purpose of the search condition—deterrence of further narcotic-related offenses by the probationer—will be defeated. The Court of Appeal, it is argued, has confused the proposition that acceptance of a search condition does not waive the right to object to a search conducted in an unreasonable manner, with the rule that a search condition does waive the right to expect that a search will be undertaken only on reasonable cause.

---

[4] Although the Court of Appeal recognized that something less than probable cause would satisfy the reasonableness requirement for probation searches, it did not adopt a specific standard.

## II

■ A search conducted pursuant to a valid consent does not violate the Fourth Amendment unless the search exceeds the scope of the consent. (*Washington* v. *Chrisman* (1982) 455 U.S. 1, 9-10 [70 L.Ed.2d 778, 786-787, 102 S.Ct. 812].) Appellant acknowledges that he voluntarily consented to be searched without a warrant at any time. The only issue therefore is the scope of appellant's consent.

The Court of Appeal believed that waivers of Fourth Amendment rights are subject to the same strict scrutiny as are waivers of other fundamental rights. For that reason the court apparently applied the strict standard of *Johnson* v. *Zerbst* (1938) 304 U.S. 458 [82 L.Ed.1461, 58 S.Ct. 1019, 136 A.L.R. 357], which rejects an implied waiver and requires a showing that the waiver is both "knowing and intelligent." This court too, has used the language of *Johnson* with respect to the waiver of Fourth Amendment rights, stating in *People* v. *Myers* (1972) 6 Cal.3d 811, 819 [100 Cal.Rptr. 612, 494 P.2d 684], that while those rights may be waived, "the waiver must appear of record to have been knowingly and intelligently made." As we later explained in *People* v. *James* (1977) 19 Cal.3d 99, 117-118 [137 Cal.Rptr. 447, 494 P.2d 1135], however, in *Myers* there had been no waiver at all. In *James* we rejected as unnecessary and impractical a requirement that officers soliciting a waiver of Fourth Amendment rights expressly advise the person of those rights. We concluded that if a person of normal intelligence is asked to give consent for a search he will infer that he has a right to withhold that consent. We referred with approval to the explanation given by the United States Supreme Court in *Schneckloth* v. *Bustamonte* (1973) 412 U.S. 218, 235-246 [36 L.Ed.2d 854, 867-874, 93 S.Ct. 2041], for distinguishing consents to search from waivers of other constitutional rights. (19 Cal.3d 99, 118, fn. 17.)

In *Schneckloth* the high court reasoned that the purpose and application of the "knowing and intelligent waiver" requirements of *Johnson* v. *Zerbst, supra,* 304 U.S. 458, do not require or justify extension to a consent to search of the strict test of a valid waiver of constitutional rights, a test designed to protect the fairness of the trial itself. "There is a vast difference between those rights that protect a fair criminal trial and the rights guaranteed under the Fourth Amendment. Nothing, either in the purposes behind requiring a 'knowing' and 'intelligent' waiver of trial rights, or in the practical application of such a requirement suggests that it ought to be extended to the constitutional guarantee against unreasonable searches and seizures.

"A strict standard of waiver has been applied to those rights guaranteed to a criminal defendant to insure that he will be accorded the greatest

possible opportunity to utilize every facet of the constitutional model of a fair criminal trial. Any trial conducted in derogation of that model leaves open the possibility that the trial reached an unfair result precisely because all the protections specified in the Constitution were not provided. . . .

"The protections of the Fourth Amendment are of a wholly different order, and have nothing whatever to do with promoting the fair ascertainment of truth at a criminal trial. . . . The guarantees of the Fourth Amendment stand 'as a protection of quite different constitutional values — values reflecting the concern of our society for the right of each individual to be let alone. . . .' [Citation.] [¶] Nor can it even be said that a search, as opposed to an eventual trial, is somehow 'unfair' if a person consents to a search. . . . [T]here is nothing constitutionally suspect in a person's voluntarily allowing a search. . . . And, unlike those constitutional guarantees that protect a defendant at trial, it cannot be said every reasonable presumption ought to be indulged against voluntary relinquishment." (*Schneckloth* v. *Bustamonte, supra,* 412 U.S. at pp. 241-243.)

In *Schneckloth* the court considered also the impracticability of expecting police officers in the field to undertake a detailed examination of the individual's understanding of his rights and the impact of the waiver demanded by *Johnson* v. *Zerbst, supra,* 304 U.S. 458. "It would be unrealistic to expect that in the informal, unstructured context of a consent search, a policeman, upon pain of tainting the evidence obtained, could make the detailed type of examination demanded by *Johnson.*" (412 U.S. at p. 245 [36 L.Ed.2d at p. 873].)

■ Here, too, the reasoning of *Schneckloth* leads us to conclude that the strict test of waiver of *Johnson* v. *Zerbst* and principles of narrow construction have no application in determining the scope of appellant's consent to search given as a condition to the grant of probation. Rather, appellant's waiver of his Fourth Amendment rights must be interpreted on the basis of an objective test. Law enforcement officers who rely on search conditions in probation orders, the probationer himself, and other judges who may be called upon to determine the lawfulness of a search, must be able to determine the scope of the condition by reference to the probation order. We cannot expect police officers and probation agents who undertake searches pursuant to a search condition of a probation agreement to do more than give the condition the meaning that would appear to a reasonable, objective reader. They can neither inquire into the subjective understanding of the probationer, nor analyze the condition in light of legal precedent drawing fine points based on minor differences in the wording of search conditions in

other probation orders.[5] The search condition must therefore be interpreted on the basis of what a reasonable person would understand from the language of the condition itself, not on the basis of appellant's subjective understanding, or under a strict test in which a presumption against waiver is applied.

■ We think the wording of appellant's probation search condition authorized the instant search. The condition is worded almost identically to the condition at issue in *People* v. *Mason, supra,* 5 Cal.3d 759. As in this case, the defendant in *Mason* agreed as a condition of his probation to " 'submit his person, place of residence, vehicle, to search and seizure at any time of the day or night, with or without a search warrant, . . .' " (5 Cal.3d at p. 762.) We observed in *Mason* that "a probationer who has been granted the privilege of probation on condition that he submit at any time to a warrantless search may have no reasonable expectation of traditional Fourth Amendment protection." (*Id.* at p. 765.) Consequently, "when defendant in order to obtain probation specifically agreed to permit at any time a warrantless search of his person, car and house, he voluntarily waived whatever claim of privacy he might otherwise have had." (*Id.* at p. 766.) We read the consent in *Mason* as a complete waiver of that probationer's Fourth Amendment rights, save only his right to object to harassment or searches conducted in an unreasonable manner. (5 Cal.3d at p. 765, fn. 3.) We see no reason to interpret the condition imposed on this appellant more narrowly.

It is true, as appellant asserts, that some Courts of Appeal have held that search conditions in probation agreements require "reasonable cause"—defined as something less than probable cause—to search. Some of these cases, however, have involved search conditions that expressly required reasonable cause. (E.g., *People* v. *Kasinger* (1976) 57 Cal.App.3d 975 [129 Cal.Rptr. 483]; *People* v. *Constancio* (1974) 42 Cal.App.3d 533 [116 Cal.Rptr. 910].)[6] Others, such as *People* v. *Guerrero* (1978) 85 Cal.App.3d 572 [149 Cal.Rptr. 555], and *People* v. *Bremmer* (1973) 30 Cal.App.3d 1058 [106 Cal.Rptr. 797], relied on by the Court of Appeal, reached this conclusion in reliance on parole cases, thus blurring what has traditionally been a

[5] The only evidence regarding the search condition to which appellant was subject is the minute order reciting the terms and conditions of probation. Neither the People nor appellant offered any evidence regarding the explanation, if any, given by the court or the probation officer at the time probation was granted, or of appellant's understanding of the scope of the consent to search.

[6] As these cases illustrate, if a sentencing judge believes that a "reasonable cause" requirement is warranted in the particular case, either initially or as a modification of the terms of probation (see, e.g., *People* v. *Kern* (1968) 264 Cal.App.2d 962, 965 [71 Cal.Rptr. 105]), he has the discretion to place such language in the probation search condition. Absent such express language, however, a reasonable-cause requirement will not be implied.

distinction between probation and parole searches. (*People* v. *Guerrero, supra,* at p. 581 [citing *People* v. *Icenogle* (1977) 71 Cal.App.3d 576 (139 Cal.Rptr. 637)]; *People* v. *Bremmer, supra,* 30 Cal.App.3d at p. 1063 [citing *In re Martinez* (1970) 1 Cal.3d 641 (83 Cal.Rptr. 382, 463 P.2d 734)].) In addition, *Guerrero* mistakenly equated the observation in *People* v. *Garcia* (1975) 44 Cal.App.3d 1029, 1032 [119 Cal.Rptr. 128], that officers cannot act arbitrarily or capriciously or harass a probationer, with a requirement of "reasonable suspicion" for a probation search. (85 Cal.App.3d at p. 582.) Each of the cases, moreover, was decided prior to this court's decision in *People* v. *Lilienthal* (1978) 22 Cal.3d 891 [150 Cal.Rptr. 910, 587 P.2d 706], in which we again held that the search condition alone justifies a warrantless search. "Since the search was justifiable on this ground, it is unnecessary to address defendant's contention that there was no independent probable cause to search ...." (*Id.* at p. 900.)

█ We have also held that a warrantless search of a *parolee* pursuant to the terms of his parole is unreasonable in the absence of reasonable suspicion that the parolee is engaged in criminal conduct or other violation of his parole. (*People* v. *Burgener* (1986) 41 Cal.3d 505 [224 Cal.Rptr. 112, 714 P.2d 1251].) In so doing, however, we noted that under the present statutory scheme governing the parole of felons from state prison the prisoner in no sense consents to the waiver of his Fourth Amendment rights. Rather, the parole search condition is imposed upon him: "The Board of Prison Terms has no discretion to grant or withhold parole to a prisoner who has served a determinate term. The prisoner neither applies for nor has the right to reject release on parole. ... [T]he parolee's acceptance of parole under the determinate sentence law is in no sense pursuant to a voluntary agreement by which he has waived his right to privacy in exchange for release on parole." (*Id.* at p. 529, fn. 12.) Only the parolee's status as a felon and the societal interest in rehabilitation and supervision to protect the public justify imposing the warrantless search term of parole. (*Id.* at pp. 531-532.) Consequently, in determining the proper scope of a parole-search condition, we found it necessary to balance the parolee's privacy interest with the societal interest in public safety. (41 Cal.3d at p. 532; cf. *Griffin* v. *Wisconsin* (1987) 483 U.S. __ [97 L.Ed.2d 709, 107 S.Ct. 3164] [probation search pursuant to administrative regulation].)

█ No such balancing is necessary here. A probationer, unlike a parolee, consents to the waiver of his Fourth Amendment rights in exchange for the opportunity to avoid service of a state prison term. Probation is not a right, but a privilege. "If the defendant considers the conditions of probation more harsh than the sentence the court would otherwise impose, he has the right to refuse probation and undergo the sentence. [Citations.]" (*In re Bushman* (1970) 1 Cal.3d 767, 776 [83 Cal.Rptr. 375, 463 P.2d 727], disap-

proved on other grounds in *People* v. *Lent, supra,* 15 Cal.3d at p. 486, fn. 1; *People* v. *Caron* (1981) 115 Cal.App.3d 236, 247 [171 Cal.Rptr. 203].) A probationer's waiver of his Fourth Amendment rights is no less voluntary than the waiver of rights by a defendant who pleads guilty to gain the benefits of a plea bargain. (See *Bordenkircher* v. *Hayes* (1978) 434 U.S. 357, 360-364 [54 L.Ed.2d 604, 608-611, 98 S.Ct. 663]; *In re Ibarra* (1983) 34 Cal.3d 277, 287 [193 Cal.Rptr. 538, 666 P.2d 980].) Were we to conclude that a probationer's waiver of Fourth Amendment rights were either impermissible or limited to searches conducted only upon a reasonable-suspicion standard, the opportunity to choose probation might well be denied to many felons by judges whose willingness to offer the defendant probation in lieu of prison is predicated upon knowledge that the defendant will be subject to search at any time for a proper probation or law enforcement purpose. We see no basis for denying a defendant the right to waive his Fourth Amendment rights in order to accept the benefits of probation. The reasonable-suspicion standard adopted in *Burgener, supra,* 41 Cal.3d 505, for parole searches, therefore, has no application to searches conducted pursuant to a consensual probation order.

The Court of Appeal in this case believed that a narrow reading of appellant's search condition was suggested by *People* v. *Mason, supra,* 5 Cal.3d 759 and *People* v. *Superior Court (Stevens)* (1974) 12 Cal.3d 858 [117 Cal.Rptr. 433, 528 P.2d 41], both involving a probationer's agreement to submit to warrantless search "upon request." In *Mason* we stated that a search made pursuant to this condition without defendant's knowledge would be invalid. (5 Cal.3d at p. 763.) Finding *Mason* dispositive, in *Stevens* we held unlawful a probation search of defendant's home made in his absence and without notice. (12 Cal.3d at p. 861.) These cases, the Court of Appeal determined, require that an "advance consent" condition be narrowly construed.

The Court of Appeal acknowledged that notice is not required when not included in the search condition. (*People* v. *Lilienthal, supra,* 22 Cal.3d at pp. 899-900.) It reasoned, however, that reasonable cause is required because, unlike notice, reasonable cause is an aspect of Fourth Amendment protection. What this reasoning overlooks is that *any* warrantless search is unreasonable per se within the contemplation of the Fourth Amendment *unless* it is conducted pursuant to one of the few, narrowly drawn exceptions to the constitutional requirement of a warrant. (*Mincey* v. *Arizona* (1978) 437 U.S. 385, 390 [57 L.Ed.2d 290, 298-299, 98 S.Ct. 2408].) Consent is such an exception. (*Schneckloth* v. *Bustamonte, supra,* 412 U.S. at p. 219; see *People* v. *Mason, supra,* 5 Cal.3d at pp. 765-766.) Inasmuch as a search or seizure pursuant to a valid consent does not violate the Fourth Amendment, it is not unreasonable unless it exceeds the scope of the con-

sent. We find no reason to conclude that a defendant who in order to obtain probation specifically agreed to submit to search "with or without a warrant at any time" has waived only the right to demand a warrant. Rather, as we stated in *Mason,* the defendant has voluntarily waived "whatever claim of privacy he might otherwise have had."[7] (5 Cal.3d at p. 766.)

■ Our interpretation of the scope of appellant's consent in agreeing to the search condition of his probation is consistent with the dual purpose of such a provision "to deter further offenses by the probationer and to ascertain whether he is complying with the terms of his probation" (*People v. Mason, supra,* 5 Cal.3d at p. 763). As we recognized in *Mason*: " 'With knowledge he may be subject to a search by law enforcement officers at any time, [the probationer] will be less inclined to have narcotics or dangerous drugs in his possession. The purpose of an unexpected, unprovoked search of defendant is to ascertain whether he is complying with the terms of probation; to determine not only whether he disobeys the law, but also whether he obeys the law. Information obtained under such circumstances would afford a valuable measure of the effectiveness of the supervision given the defendant and his amenability to rehabilitation.' (*People v. Kern,* [*supra,*] 264 Cal.App.2d 962, 965.)"

As Justice Sonenshine, dissenting below, observed: "Probationers, by consenting to clear and unconditional conditions such as Bravo's, are on notice their behavior is being monitored. They have, as a condition precedent to receiving the court's leniency, agreed in advance to waive their Fourth Amendment rights. To condition warrantless probation searches upon reasonable cause would make the probation order superfluous and vitiate its purpose. (See also *People v. Lilienthal, supra,* 22 Cal.3d 891 [,900].)"

■ We do not suggest that searches of probationers may be conducted for reasons unrelated to the rehabilitative and reformative purposes of probation or other legitimate law enforcement purposes. A waiver of Fourth Amendment rights as a condition of probation does not permit searches undertaken for harassment or searches for arbitrary or capricious reasons. (See *People v. Mason, supra,* 5 Cal.3d at p. 765, fn. 3; *People v. Turner* (1976) 54 Cal.App.3d 500, 507 [126 Cal.Rptr. 652]; cf. *People v. Pipitone*

---

[7] Although we believe the import of the "warrantless search" condition is clear, any ambiguity on this point can be dispelled if, at the time probation is granted, the defendant is advised of the scope of the search condition. (Cf. Pen. Code, §§ 1203d [copy of probation report furnished defendant before sentence], 1203.12 [written statement of terms and conditions of probation furnished defendant after release on probation].) Oral advice at the time of sentencing would afford defendants the opportunity to clarify any conditions they may not understand and intelligently to exercise the right to reject probation granted on conditions deemed too onerous.

(1978) 86 Cal.App.3d 681, 688 [152 Cal.Rptr. 1] [pretext search].) We hold only that a search condition of probation that permits a search without a warrant also permits a search without "reasonable cause," as the former includes the latter. (See *People* v. *Turner, supra.*)

The condition of appellant's probation by which he consented to warrantless search at any time justified the search of his home undertaken by the officers who suspected that he was engaged in narcotics activity. The decision of the Court of Appeal is reversed, and that court is directed to enter its order affirming the judgment of conviction.

Lucas, C. J., Mosk, J., Broussard, J., Arguelles, J., Eagleson, J., and Kaufman, J., concurred.