Filed 5/6/13  P. v. Cosovich CA5

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>STEVEN RALPH COSOVICH,<br><br>Defendant and Appellant. | F064317<br><br>(Super. Ct. No. CRF33134)<br><br>**O P I N I O N** |

### THE COURT*

APPEAL from a judgment of the Superior Court of Tuolumne County.  Eleanor Provost, Judge.

Allison H. Ting, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Carlos A. Martinez and Wanda Hill Rouzan, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

---

*        Before Wiseman, Acting P.J., Cornell, J., and Gomes, J.

Following the denial of his motion to suppress evidence (Pen. Code,[1] § 1538.5), appellant, Steven Ralph Cosovich, pursuant to a plea agreement, pled guilty to transportation of methamphetamine (Health & Saf. Code, § 11379, subd. (a)) and possession of a firearm by a felon (former § 12021, subd. (a)(1)). The trial court imposed a prison term of four years eight months.

On appeal, appellant's sole contention is that the court erred in denying the suppression motion. We affirm.

## FACTS[2]

At approximately 10:23 p.m. on August 7, 2010, Tuolumne County Deputy Sheriff Alejandro Rivera was driving northbound on Fifth Avenue in Jamestown when he saw a car traveling southbound on the same street.[3] As he looked in his side mirror, he saw that the car appeared to have no rear license plate, so he made a U-turn and "got behind the vehicle." At that point, Rivera saw that the car had a rear license plate. However, he was unable to read it because it was faded and one of the license plate lights was not working.

The car drove into a store parking lot, and Rivera followed in his patrol vehicle. As the car came to a stop, Rivera stopped right behind it and "activated [his] lights." Rivera made contact with the vehicle's two occupants—appellant, who was driving, and Morgan Carruth, the passenger—and each, upon the deputy's request, provided

---

**1**    All statutory references are to the Penal Code unless otherwise indicated.

**2**    We set forth the relevant facts, which we take from the hearing on the suppression motion, in the light most favorable to the trial court's ruling on the motion. (See *People v. Miranda* (1993) 17 Cal.App.4th 917, 922 ["In reviewing the denial of a motion to suppress evidence, we view the record in the light most favorable to the trial court's ruling and defer to its findings of historical fact, whether express or implied, if they are supported by substantial evidence"].)

**3**    Our factual statement is taken from Deputy Rivera's testimony.

2

identification.  With both persons still seated in the car, Rivera contacted "dispatch," and was informed that appellant was on probation for possession of a firearm by a felon (§ 12021) and was subject to "an open search clause."  As he was "running this check on [appellant and Carruth]," Rivera observed that appellant "was making some type of movements toward the center console area of the vehicle."

After speaking with dispatch, Rivera returned to the car and asked appellant and Carruth if there was "anything illegal" in the car and for permission to search the car.  Carruth responded that the car contained nothing illegal and that she did not want Rivera searching it.  At that point, Rivera explained that appellant "was on searchable probation" and that he (Rivera) was going to "perform a search."  Rivera asked appellant to exit the car, and he asked Carruth to remain inside.

Appellant got out of the car.  Rivera "walked him" to the rear of the car, where, at the deputy's direction, appellant placed his hands on top of his head and interlaced his fingers, and Rivera "started to search" him.  When Rivera "got to [appellant's] left side," he (Rivera) "felt a lot of items" in appellant's shirt pocket.  Rivera "reached in there" and "felt an envelope, some other papers, and something plastic."  Rivera removed the items and placed them on the trunk of the car.  Subsequently, a police detective arrived on the scene and found, in Carruth's purse, a scale and a "pay/owe sheet."

Prior to August 7, 2010, Rivera had had "one or two contacts" with appellant, but did not know him by name.

## DISCUSSION

A search conducted without a warrant is unreasonable per se under the Fourth Amendment unless it falls within one of the specially established and well-delineated exceptions.  (*People v. Woods* (1999) 21 Cal.4th 668, 674.)  One such exception is for probation searches, i.e., searches conducted pursuant to a valid search condition of probation.  The Legislature has authorized convicted criminals be granted probation to

promote rehabilitation and reduce recidivism (§ 1203.1), and to that end has also authorized that convicted criminals be required to agree to reasonable conditions before granting probation. (*People v. Bravo* (1987) 43 Cal.3d 600, 608 (*Bravo*); *People v. Lent* (1975) 15 Cal.3d 481, 486.) One such condition is a probationer's waiver of his or her Fourth Amendment rights "in exchange for the opportunity to avoid serving a state prison sentence." (*People v. Reyes* (1998) 19 Cal.4th 743, 749 (*Reyes*).) "'[A]n adult probationer subject to a search condition may be searched by law enforcement officers having neither a search warrant nor even reasonable cause to believe their search will disclose any evidence.' [Citation.]" (*Ibid.*) "[T]he purpose of the search condition is to deter the commission of crimes and to protect the public, and the effectiveness of the deterrent is enhanced by the potential for random searches." (*Id.* at p. 753.)

The waiver of Fourth Amendment rights in this context, however, is not unlimited. "A waiver of Fourth Amendment rights as a condition of probation does not permit searches undertaken for harassment or searches for arbitrary or capricious reasons." (*Bravo*, *supra*, 43 Cal.3d at p. 610; see also *People v. Medina* (2007) 158 Cal.App.4th 1571, 1576 ["A probationer's consent is considered 'a complete waiver of that probationer's Fourth Amendment rights, save only his [or her] right to object to harassment or searches conducted in an unreasonable manner'"].) The legal meaning of the words "arbitrary" and "capricious," in this context, relates to the executing officer's motivation for the search. (*In re Anthony S.* (1992) 4 Cal.App.4th 1000, 1004 (*Anthony S.*).)[4] A search is arbitrary "[w]here the motivation is unrelated to rehabilitative and reformative purposes or legitimate law enforcement purposes," as where, e.g., an officer is motivated by "personal animosity" toward the person being searched. (*Ibid.*)

---

[4] As did the court in *Anthony S.*, "Consistent with Black's Law Dictionary, we treat 'arbitrary' and 'capricious' as synonymous. [Citation.]" (*Anthony S.*, *supra*, 4 Cal.App.4th at p. 1004, fn. 3.)

4

Appellant contends the probation search here was arbitrary and therefore constitutionally unreasonable.  However, as we explain below, appellant did not raise this claim below and is therefore precluded from raising it on appeal.

In *People v. Williams* (1999) 20 Cal.4th 119 (*Williams*), our Supreme Court examined the specificity with which a defendant must make a motion to suppress evidence pursuant to section 1538.5.  "[W]hen the basis of a motion to suppress is a warrantless search or seizure, the requisite specificity is generally satisfied, *in the first instance*, if defendants simply assert the absence of a warrant and make a prima facie showing to support that assertion.  Of course, if defendants have a specific argument *other than the lack of a warrant* as to why a warrantless search or seizure was unreasonable, they must specify that argument as part of their motion to suppress and give the prosecution an opportunity to offer evidence on the point." (*Williams*, at p. 130.) Once the defendant meets the foregoing specificity requirement, "[t]he prosecution ... has the burden of proving some justification for the warrantless search or seizure...." (*Id*. at p. 136.)

But, the court stated further, "once the prosecution has offered a justification for a warrantless search or seizure, defendants must present any arguments as to why that justification is inadequate.  [Citation.]  Otherwise, defendants would not meet their burden under section 1538.5 of specifying why the search or seizure without a warrant was 'unreasonable.'  This specificity requirement does not place the burden of proof on defendants.  [Citation.]  … [T]he burden of raising an issue is distinct from the burden of proof.  The prosecution retains the burden of proving that the warrantless search or seizure was reasonable under the circumstances.  [Citations.]  But, if defendants detect a critical gap in the prosecution's proof or a flaw in its legal analysis, they must object *on that basis* to admission of the evidence or risk forfeiting the issue on appeal." (*Williams*, *supra*, 20 Cal.4th at p. 130, italics added.)  "Defendants cannot ... lay a trap for the

5

prosecution by remaining completely silent until the appeal about issues the prosecution may have overlooked." (*Id.* at p. 131.) "Defendants who do not give the prosecution sufficient notice of [the] inadequacies [in the prosecution's proposed justification for a warrantless search or seizure] cannot raise the issue on appeal." (*Id.* at p. 136.) "'This is an elemental matter of fairness in giving each of the parties an opportunity adequately to litigate the facts and inferences relating to the adverse party's contentions.'" (*Ibid.*)

Here, appellant, in his moving papers, challenged the warrantless search on a variety of grounds, including that Deputy Rivera, prior to stopping the car appellant was driving, did not "entertain an objectively reasonable suspicion that [appellant] was involved in criminal activity," and therefore the stop of the car violated appellant's Fourth Amendment rights and evidence seized as a result of the illegal stop must be suppressed. However, appellant did not attack the probation search as arbitrary. The People, in their responding papers, addressed the arguments raised by appellant and, in addition, argued that Rivera conducted a valid probation search. Appellant made no response to this argument at the hearing on the suppression motion, and he filed no papers in response to the People's written opposition. Now for the first time, on appeal, appellant asserts, in effect, that he has "detect[ed] a critical gap in the prosecution's proof" and/or "a flaw in [the prosecution's] legal analysis" (*Williams*, *supra*, 20 Cal.4th at p. 130), i.e., he claims the search here was arbitrary and therefore cannot be justified as a valid probation search. However, as indicated above, appellant did not raise this point in the trial court. Therefore, because he was "completely silent until the appeal" (*id.* at p. 131) on the one issue he raises on appeal, under *Williams*, he may not now challenge the search on that basis.

In any event, even if appellant's claim were properly before us, it would fail. As indicated above, appellant contends the instant search was arbitrary, and therefore cannot be justified as a valid probation search. This conclusion is compelled, he argues, as best

6

we can determine, because (1) Deputy Rivera did not "articulate" or "advance[]" a "legitimate law enforcement reason" for conducting the search, and (2) the record does not establish such a reason. In support of these claims, he asserts that in the instant case, "there was no evidence the officers were looking for anything at all," and "the deputy never said … he was looking for anything, or that he wanted to find anything." He contrasts the instant case to other cases, representative of which are *Anthony S.*, *supra*, 4 Cal.App.4th 1000 and *Reyes*, *supra*, 19 Cal.4th 743, that, he argues, do not suffer from such purported defects.

In *Anthony S.*, the court upheld a search of the bedroom of the minor (Anthony). Anthony was a gang member, he was on probation, and one of the terms of his probation required him to submit to a search of, inter alia, his residence, "'for: ... stolen property/ alcohol ... gang graffiti, gang paraphernalia.'" (*Anthony S.*, *supra*, 4 Cal.App.4th at p. 1002, fn. omitted.) "When asked what he was looking for at Anthony's home, [one of the officers who conducted the search] said: 'We were looking for items listed on the terms of his probation; one being stolen property, alcohol, weapons ... and gang paraphernalia ....'" (*Ibid.*)

In *Reyes*, where the court upheld the warrantless search of a shed located in the backyard of a parolee whose parole agreement contained a provision that "'any property under [his] control'" could be searched without a warrant, the defendant's parole agent "contacted [police] after receiving an anonymous telephone tip, and asked the officers to evaluate defendant to see if he was under the influence of drugs." (*Reyes*, *supra*, 19 Cal.4th at pp. 746-747.) The court concluded: "Where the search is for a proper purpose, we hold that, even in the absence of particularized suspicion, a search conducted under the auspices of a properly imposed parole search condition does not intrude on any expectation of privacy 'society is "prepared to recognize as legitimate."'" (*Id*. at p. 754.)

Nothing in these cases, or in the other cases cited by appellant, suggests the court here erred in denying appellant's suppression motion. Admittedly, Deputy Rivera did not articulate his reason(s) for searching appellant. This is not surprising. Rivera was not examined regarding his motivation, presumably because, as demonstrated above, although his motivation would have been relevant to a claim that the search was arbitrary, appellant did not raise this claim below. For the same reason, the People had no reason to present other evidence regarding the deputy's motivation. None of the cases appellant cites supports the proposition that law enforcement personnel must articulate the reason(s) for a search, nor has our research uncovered any authority for such a proposition. Moreover, as in *Reyes*, the record here suggests "rehabilitative and reformative purposes or legitimate law enforcement purposes" (*Anthony S.*, *supra*, 4 Cal.App.4th a p. 1004) for the search. First, Rivera knew appellant was on probation for a gun-related offense. The search served the legitimate law enforcement purpose of helping insure the deputy's safety. Second, the search served the purpose of helping the deputy determine whether appellant was in compliance with the terms of his probation, also a legitimate purpose. (See *Bravo*, *supra*, 43 Cal.3d at p. 610 ["dual purpose of [a probation search condition is] 'to deter further offenses by the probationer and to ascertain whether he is complying with the terms of his probation'"].) On this record, where proper motivations for the search are reasonably inferable from the record and the record contains no indication that the deputy acted out of personal animosity or for any other arbitrary reason, a warrantless and suspicionless search of a probationer subject to a search condition of probation does not violate the probationer's Fourth Amendment rights.

**DISPOSITION**

The judgment is affirmed.